IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA )
)
)
)
V. ) Cr.No.06-092T-02
)
)
ESTOREDARCIO BERNARD )

DEFENDANT'S SENTENCING MEMORANDUM

Comes now the Defendant, Estoredarcio Bernard, by and through counsel and hereby submits this sentencing memorandum for the Court's consideration..

1. Defendant objects to the Base Offense Level of 34 which is premised upon the distribution of 48.497 kilos of cocaine. We understand that the Office of Probation derived this base offense level form the 5.5 kilos of cocaine that Mr. Bernard admitted to distributing as well as 43 kilos being the amount involved in other relevant conduct with other individuals. We believe that the offense conduct, as well as reliable and probative other relevant conduct, indicates that Mr. Bernard's Base Offense level is 32. We note that the Office of Probation indicates that although the Government did not provide details of all of the defendants "known drug distribution activities, they provided information in the case of Carlos Diaz (CR 06- 00019-01ML) that on January 20, 2007 approximately 43 kilos of cocaine was distributed by Mr. Bernard." First, we point out that no one allegedly involved with Mr. Bernard was convicted of distributing that amount of cocaine. Also we point out that pursuant to a cooperation agreement, Mr. Bernard was extensively interviewed by the FBI on February 6, 2006 with regard to the alleged 43 kilos of cocaine allegedly distributed on January 20, 2006. See, FBI Field

Investigation Report, D-302, dated May 23, 2006 attached as Exhibit A.) Apparently, there was an investigative concern that on that date a U-Haul Truck was allegedly utilized to store or transport 43 kilos of cocaine and such was stored on the premises of California Liquors. Mr. Bernard candidly and truthfully explained that on that date there was a transaction involving 6 kilos of cocaine and that the U-Haul was used merely to store legitimate product for the adjacent liquor store. Mr. Bernard vehemently denies that he was involved with a 43 kilo transaction on or about January 20, 2006. We also point out that Mr. Diaz has also denied that he was involved in a 43 kilo transaction with Mr. Bernard, *See*, Objection to Presentence Report and Motion for a Downward Departure from Guideline range, Filed by Mr. Diaz on September 26, 2006, attached as Exhibit B.) Moreover, we suggest that if the Government believed or had evidence that Mr. Bernard was involved in additional drug transactions, particularly a 43 kilo transaction, it certainly would have included such as part of its case and certainly with regard to its position as to other relevant conduct. We note that the Government has chosen not to seek to include the alleged 43 kilo transaction as part of its submittals to the court or to the Office of Probation.

We recognize that for sentencing purposes, a defendant is accountable not only for drugs that were actually involved in the crime of conviction but also for what was involved in any "relevant conduct." *See United States v. Laboy,* 351 F.3d 578, 582 (1st Cir.2003); *see also* USSG § 1B1.3. We also recognize that relevant conduct includes all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction, whether or not charged in the indictment." *United States v. Sklar,* 920 F.2d 107, 110 (1st Cir.1990) (quoting USSG § 1B1.3 (a) (2.) However, to bring uncharged conduct into play, the Government must show a sufficient nexus between the conduct and the offense of conviction by a preponderance of the evidence. *Id.* at 110. At sentencing, the government bears the burden of proving drug quantity. *See United States v. Huddleston,* 194 F.3d 214, 224 (1st Cir.1999). In determining drug quantity, the sentencing court may accept, and act upon, any *reliable* evidence. *See, Sklar* at 113.

"When a district court determines drug quantity for the purpose of sentencing a defendant convicted of participating in a drug-trafficking conspiracy, the court is required to make an individualized finding as to drug amounts attributable to or foreseeable by, that defendant. (Footnote omitted) In the absence of such an individualized finding, the drug quantity attributable to the conspiracy as a whole cannot automatically be shifted to the defendant." *United States v. Colon-Solis,* 354 F.3d 101 (1st Cir. 2004).

Typically, the court makes its drug-quantity determination by reference to a preponderance of the evidence. *See United States v. Eirby,* 262 F.3d 31, 37 (1st Cir.2001). Under that standard, the amount need not be exact; "[a]n approximation of drug quantity will be upheld "as long as it represents a reasoned estimate." "If the exact amount [of drugs] cannot be determined, an estimate will suffice, but here also a preponderance of the evidence must support the estimate. Thus when choosing between a number of plausible estimates of drug quantity ... a court must err on the side of caution. *United States v. Sklar,* 920 F.2d 107(1st Cir. 1990).

We point out that the Government must prove the additional quantities by reliable evidence. We do not believe that there is any evidence other than uncorroborated speculation and hearsay to support the suggestion that Mr. Bernard is accountable for 48 kilos of cocaine. We do not believe that there is any evidence with sufficient indicia of reliability that would support the proposed finding that Mr. Bernard should he held accountable for an additional 43 kilos of cocaine. As such, we believe that the base offense level should be 32 not 34.

Further, in its recent submission to the Court, the Government believes that it has established that Mr. Bernard was in fact involved by in a 43 kilo transaction and premises such an argument upon a audio tape of a conversation that occurred on January 20, 2006. We suggest that the relied upon audio tape fails to support the Government's claim. Specifically, when asked by Jo-Jo, "How much came?" Ulises, responded "Nah, just one, one. Man, it all went out.

It was incredible. 43 gone seconds." An equally plausible interpretation that we suggest is more reliable is that there was one kilo of cocaine that was sold in 43 seconds. The tape proferred by the Government is far form conclusive in establishing that Mr. Bernard was involved in a 43 kilo transaction.

2. Mr Bernard also objects to the Office of Probation's suggestion that Mr. Bernard's "relevant conduct" warrants an aggravating role adjustment pursuant to USSG §3B1.1. First, we believe that the proper offense conduct only includes 4 participants. Second, even if the Court were to ultimately conclude that there were 5 or more participants we do not believe that it is factually or legally supportable to conclude that Mr. Bernard was an organizer, leader, manager or supervisor of a criminal activity.

It appears that the Office of Probation is including Mr. Carlos Diaz as the fifth participant and the Office suggests that Mr. Bernard "was involved in additional drug activities." See, Draft PSI, ¶21. We believe that there is little, if any evidence, to suggest that Mr. Diaz was involved in the crime of conviction or the relevant conduct associated therewith. We point out the following facts:

a. The Complaint that was filed and the indictment, as well as the plea charge Mr. Bernard with distribution of cocaine relating to events that occurred on January 30, 2006 involving the distribution of 5.5 kilos of cocaine. The Complaint, Indictment and Plea (Attached as Exhibit C.) in Mr. Diaz case charge him with distribution of 3.5 to 5 kilos of cocaine. We point out that in the filings supporting Mr. Bernard's charges there is no mention whatsoever that Mr. Diaz was involved.

b. Further, in Mr. Diaz' case it was merely a government theory that Mr. Diaz assisted Mr. Bernard in the distribution of cocaine and Mr. Diaz did not admit that he was part of a conspiracy involving Mr. Bernard. See, Objection to Presentence Report and Motion for a Downward Departure from Guideline range, Filed by Mr. Diaz on September 26, 2006, attached as Exhibit B.

c. In fact, a Government witness in Mr. Diaz' case, Mr. Patrick Schwab, who was charged in a separate indictment, stated that Mr. Carlos Diaz simply acted as an interpreter for *him* and never handled any cocaine for him nor did he ever see Mr. Diaz in possession of cocaine. *Id.*

d. The gravamen of the charges against Mr. Diaz was that Mr. Diaz acted as an interpreter between Mr. Patrick Schwab and Alberto Sama-Graciano. There is no suggestion that he was involved with Mr. Bernard.

e. Further, the charges that were filed against Mr. Sama-Graciano also belie a connection between Mr. Diaz and Mr. Bernard. We note that the stipulated facts in Mr. Sama-Graciano's prove that Mr. Sama-Graziano attempted to possess 992.82 grams of cocaine which was to be provided by *Anderson Garcia* and another 1 kilo of cocaine from *Mr. Jose Enrique Castillo Mende and others.* (See, Alberto Sama-Graciano, Plea Agreement, ¶4 (a) and (c), attached as Exhibit D. Again, there is no mention that any of the above defendants conspired with Mr. Bernard.

We point out that Application Note 1 to USSG §3B1.1 provides that "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense (e.g., an undercover law enforcement officer) is not a participant." We point out that at no time was Mr. Diaz held to be "criminally" responsible for the "offense." Rather, he was convicted for acting as a translator and facilitator for two *other* individuals that were conspiring to distribute cocaine that did not involve Mr. Bernard. We do not agree that factually he can be considered a "participant" in Mr. Bernard's offense and associated relevant conduct.

As you know, "[u]nder the advisory guidelines regime, the district court can use the preponderance of the evidence standard to determine whether an enhancement applies." *United States v. Holliday,* 457 F.3d 121, 130 (1st Cir.2006). To properly apply USSG §3B1.1 , "a district court must make both a status determination-a finding that the defendant acted as a leader or organizer of the criminal activity-and a scope determination-a finding that the criminal

activity met either the numerosity or the extensiveness benchmarks established by the guidelines." *United States v. Tejada-Beltran,* 50 F.3d 105, 110 (1st Cir.1995) A role adjustment pursuant to USSG §3B1.1 is assessed based on "the totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity, and duration of the scheme" *United States v. Dietz,* 950 F.2d 50, 53 (1st Cir.1991). In *United States v. Thiongo.* 344 F.3d 55 (1st Cir. 2003) in upholding a district court's rejection of a USSG §3B1.1 aggravating role enhancement, the court noted that the Defendant employed alleged "participants" only to a "limited extent" and would have committed the same crimes in essentially the same way absent the assistance of these individuals. We suggest here that the fact that Mr. Diaz was also an employee of California Liquors is not determinative nor is the fact Mr. Diaz may have been utilized to a limited extent as an employee. Further it is quite clear form the admitted facts, that Mr. Bernard would have committed the "same crimes in essentially the same way absent the assistance' or involvement of Mr. Diaz. We point out from the undisputed facts that the government intercepted a communication between Mr. Bernard and a Mr. Fernando Gonzalez Ramirez whereby Ramirez requested that Bernard help him out and accept a delivery of cocaine coming from Colorado. The "mule" or driver of that cocaine, Mr. Aldaberto Bejarano Gonzalez, then contacted Mr. Bernard once the cocaine was in Providence, RI. Mr. Bernard had the cocaine delivered to another location (not California Liquors) and was subsequently arrested. It certainly appears that the crime would have been committed even absent Mr. Diaz' involvement since it appears that he had no involvement with the delivery or movement of the cocaine. We point out that at no time was Mr. Diaz involved in the decision to accept the cocaine or its anticipated distribution. We note that there is no evidence that Mr. Diaz acted as anything more than a translator between two other individuals and there is no reliable evidence that Mr. Bernard was criminally involved with Mr. Diaz. "Sentencing court may consider all pertinent information which has "sufficient indicia of reliability to support its probable

accuracy"). *United States* v. *Bradley,* 917 F.2d 601, 605 (1st Cir. 1990). We suggest that there is not any evidence with sufficient indicia of reliability to support the conclusion that Mr. Diaz was a "participant" for the purposes of an aggravating role adjustment for Mr. Bernard.

We also do not believe that it factually or legally supportable to conclude that Mr. Bernard was an organizer or leader of a criminal activity. We recognize that relevant conduct is germane in determining whether a role adjustment is warranted. We note that the Office of Probation posits that Mr. Bernard was a leader "as he instructed codefendant Bearing-Gonzalez where to take the cocaine and he had made arrangements for Severino to take possession of the drugs once they arrived." Draft PSI, ¶21. From a factual point of view we do not believe that merely instructing a drug mule or courier where to drop off the drugs establishes that once is a leader. Since it was apparent that Mr. Bernard was going to accept the drugs, it is only reasonable to assume that arrangements had to be made with a courier as to where that acceptance would be made. Presumably, Mr. Bernard would want to store his narcotics in a place that he chose, based on its presumed safety. A request to deliver the drugs to a certain address seems to be more of a pragmatic decision that a leadership decision.

We point out that Application Note 4 to USSG §3B1.1 provides:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others

.

Courts typically look at factors such as specific recruitment of accomplices, exercise of control over others, and use of decision-making authority. See, e.g. *United States v. Wilson*, 185 Fed.Appx. 6, 2006 WL 1703805 (1st Cir 2006). We point out that the government has failed to meet its burden and demonstrate by a preponderance of the evidence that Mr. Bernard warrants and aggravating role enhancement. No evidence has been adduced that Mr. Bernard recruited others into the conspiracy; exercised control over others; exercised decision making authority; claimed a larger share of the profits or had a higher degree of planning or organizing he offense than any other typical narcotic trafficker or participant. We respectfully disagree with your proposition and suggested role adjustment and object accordingly.

3. The defendant object to the Office of Probation's assertion that a mandatory minimum is 10 years imprisonment is required as we believe that the so-called "safety-valve" provisions of 18 USC §3553(f) and USSG §5C1.2. are applicable In order to obtain relief under the safety valve, the following criteria must be satisfied and we suggest that Mr. Bernard has satisfied all five (5) criteria.

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the

> offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

First, it is clear that Mr. Bernard has no more than one criminal history point. See, Draft PSI ¶30.

Second, there is no evidence that Mr. Bernard or any of his alleged co-conspirators used any threats of violence or possessed a firearm (or any dangerous weapon) during the commission of offense or in any relevant conduct.

Third, there is no evidence of death or serious bodily injury as any person as a result of the criminal activity.

Fourth, as to his lack of an aggravating role adjustment, we rely on the arguments stated above.

Fifth, we point out that from the date of his arrest Mr. Bernard was cooperative and fully and truthfully provided to the Government all information and evidence concerning the offense and offenses that were part of the same course of conduct or common scheme. For instance, Mr. Bernard met with FBI agents on January 31, 2006 and on February 2, 3 and 6, 2006 and fully disclosed his involvement in the offense

In sum, we suggest that Mr. Bernard is eligible for a t least a two point departure pursuant to USSG §5C1.2

For the above reason, we object to the Probation Department's Advisory Total Offense Level. We suggest the following to be the appropriate calculation:

| | | |
|---|---|---|
| 1. | Base Offence Level (USSG§2D1.1(c)(4) | 32 |
| 2. | Specific Offense Characteristics | 0 |
| 3. | Adjustment for Role in the Offense | 0 |
| 4. | Victim Related Adjustments | 0 |
| 5. | Adjustments for Reckless Endangerment | 0 |
| | Adjusted Offense Level | 32 |
| 6. | Acceptance of Responsibility | -3 |
| 7. | Safety Valve | -2 |
| | Total Advisory Guideline Level | 27 |

Respectfully Submitted,

/s/ Steven D. DiLibero

Steven D. DiLibero, Esq. (#4678)
DiLibero & Coloian, LLP
130 Dorrance Street
Providence, RI 02903
(401) 621-9700 – phone
(401) 331-9503 – fax

## CERTIFICATION

This is to certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants when applicable on the 8th day of May, 2007.

/s/ Steven D. DiLibero