UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - -
ESTOREDARCIO BERNARD          :
                             :
     vs.                     :     CR No. 06-092-02S
                             :
UNITED STATES OF AMERICA      :
- - - - - - - - - - - - - - - -

**MEMORANDUM AND ORDER**

William E. Smith, United States District Judge.

Estoredarcio Bernard (a/k/a "Belige") has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, based on claims of ineffective assistance of his trial and appellate counsel. For the reasons stated below, that motion is denied.

I. Background and Travel

In January of 2006, members of the High-Intensity Drug Trafficking Area Task Force intercepted drug-related phone conversations, pursuant to a Court Order. In one such conversation occurring on January 26, 2006, Bernard arranged with an individual in Colorado, later identified as Fernando Gonzalez-Ramirez, to accept delivery of multiple kilograms of cocaine in Providence, Rhode Island.

On January 30, 2006, an associate of Gonzalez-Ramirez, Adalberto Bejarano-Gonzalez, arrived at California Liquors, Bernard's liquor store in Providence, in a car that had 22 half-kilogram packages of cocaine hidden in the gas tank. Bernard had one of his own men, Eucranio Severino, take possession of the

cocaine shipment from Bejarano-Gonzalez.   Severino led Bejarano-Gonzalez from the liquor store to a nearby garage.   Once inside the garage, the 22 cocaine packages were unloaded from Bejarano-Gonzalez's car.   That same day members of law enforcement conducted a search of a garage at 95 Hathaway Street and seized 11 packages containing approximately 5.5 kilograms of cocaine. Bernard was arrested on the same day at his liquor store, California Liquors, in Providence.

Bernard was subsequently charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846; and (2) possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).[1]   The indictment also sought the forfeiture of certain property (monies) in Bernard's possession.

Throughout most of the pertinent pretrial proceedings up to and including the change of plea hearing, Bernard was represented by Attorney John F. Cicilline.[2]   Thereafter, he was represented by

---

[1] Bejarano-Gonzalez, who was indicted with Bernard, pled guilty and was sentenced to 37 months incarceration.   (See United States v. Bejarano-Gonzalez, CR 06-092-ML, Doc. #37.) Gonzalez-Ramirez was charged separately and convicted by a jury and sentenced to 20 years incarceration.   (See United States v. Gonzalez-Ramirez, CR 06-97-ML.)   His conviction and sentence were affirmed on appeal.   These prosecutions need not be further discussed herein.

[2] During initial proceedings, Bernard was represented by three other counsel, all of whom filed appearances and then subsequently

Attorney Stephen D. DiLibero for all remaining proceedings in this Court, including sentencing. All proceedings in this Court pertaining to Bernard's prosecution, plea and sentencing were conducted before Senior Judge Ernest C. Torres.

Bernard subsequently entered into a plea agreement negotiated by Attorney Cicilline. Pursuant to this agreement, Bernard agreed to plead guilty to both counts of the indictment in exchange for the Government's recommendation of a sentence at the low end of the applicable sentencing guideline range as found by the Court. (Plea Agreement [Doc. #25], ¶¶ 1.a., 2.a.) The plea agreement further provided in pertinent part:

- that the Government agreed not to file a sentencing enhancement information pursuant to 21 U.S.C. § 851 naming Bernard's prior drug conviction, which would have increased his potential minimum sentence from 10 years to 20 years imprisonment (id., ¶ 2.e.);

- that the Government believed that Bernard did not qualify for the provisions of the Safety Valve, but Bernard was free to argue at sentencing that he was Safety Valve eligible; if Bernard qualified for the Safety Valve, the Government was free to recommend any sentence within the applicable guideline range (id., ¶ 2.a.);

- that if the Government, in its sole discretion, determined that Bernard provided substantial assistance, the Government would file a motion under U.S.S.G. § 5K1.1 and/or 18 U.S.C. § 3553(e) requesting the Court to impose a sentence below the guideline sentencing range or any applicable statutory minimum sentence (id., ¶ 2.f.) (emphasis added); and

---

withdrew as his counsel.

3

- that Bernard consented to the forfeiture of $99,801 in cash that was seized collectively from his store, his home and his wife (id., ¶ 4).

At the initial change of plea hearing, this Court (Torres, J.) continued the proceedings to allow the Government and defense to meet and clarify Bernard's apparent misunderstandings about the facts and charges against him. (See Transcript of Change of Plea Hearing Conducted on December 21, 2006 ["12/21/06 Plea Tr."] at 16-17.)[3]

At the subsequent plea hearing Judge Torres engaged in an extensive colloquy with Bernard in order to confirm that his decision to plead guilty was not based on an inaccurate belief that the Government would definitely recommend a lower sentence in return for his providing information to law enforcement, or that the Court would accept such a recommendation. (See Transcript of Change of Plea Hearing Conducted on January 30, 2007 ["1/30/07 Plea Tr."] at 13-18.)  After ascertaining that Bernard was relying only upon promises contained in the plea agreement, the Court accepted his guilty plea on both counts. (Id. at 18-19.)

The presentence report (PSR) prepared by the U.S. Probation Office calculated a Sentencing Guideline range of 168 - 210 months

---

[3] In the course of the plea colloquy at that hearing, Bernard disputed certain facts set forth in the Government's allocution concerning whether he actually possessed the cocaine in question and whether Bernard and Gonzalez-Ramirez had expressly discussed cocaine in the recorded telephone conversation. (See 12/21/06 Plea Tr. at 12-13, 16.)

for both offenses, based on a total offense level of 35 and a criminal history category I. (PSR, ¶¶ 19-27, 30.) The PSR attributed 5.5 kilograms of cocaine to Bernard from the January 30 transaction which comprised the subject offense. (Id., ¶ 19.) However, the PSR also discussed, as 'relevant conduct,' a separate series of drug transactions that occurred ten days earlier on January 20, 2006 ("the January 20 transactions"). (Id., ¶¶ 19-20.) Based on this relevant conduct, the offense level included: (1) a two-level increase for the additional 43 kilograms of cocaine attributed to Bernard, U.S.S.G. § 1B1.3(a)(2) (relevant conduct); and (2) a four-level upward adjustment for his aggravating role in the drug conspiracy as a leader of five or more participants, per U.S.S.G. § 3B1.1. (aggravating role). (Id., ¶ 21).

Bernard's counsel, now Attorney DiLibero, filed written objections to the PSR, challenging both the inclusion of the 43 kilograms of cocaine and the upward adjustment for Bernard's aggravated leadership role. These written objections included a reference to an admission made by Bernard during his initial custodial interrogation that he had distributed six kilograms of cocaine on January 20, but denied that he possessed or distributed 43 kilograms on that date. (See Letter dated April 25, 2007 from

5

Attorney DiLibero to USPO Kristin Ann Mattias, attached to PSR Addendum ["Defense Objections Letter"].)[4]

At the principal sentencing hearing,[5] Attorney DiLibero pressed both of his objections on Bernard's behalf. The Government presented evidence concerning Bernard's involvement in the January 20 transactions, including testimony from one of the surveilling agents and transcripts of taped telephone conversations between Bernard and various participants during the days and hours leading up to that transaction. (See Transcript of Sentencing Hearing Conducted on June 27, 2007 ["6/27/07 Sent. Tr."] at 27-37.)[6]

---

[4] The six-kilogram transaction was also discussed in Defendant's Sentencing Memorandum submitted by Attorney DiLibero on May 8, 2007. (See Def.'s Sent. Mem. [Doc. #50] at 2.)

[5] An initial sentencing hearing was continued to permit Attorney DiLibero to review additional information provided by the Government the day before that hearing. (See Transcript of Sentencing Hearing conducted on May 8, 2007 at 12-15.)

[6] R.I. State Police Detective Patrick Reilly testified as to details concerning what the surveilling agents observed at Bernard's business on January 20 -- including Bernard's parking of a U-Haul truck behind the store so that the rear of the truck was obscured from view; people and vehicles coming and leaving the parking lot; individuals walking near the parking lot perimeter acting as look-outs; a car parked so that it partially blocked the driveway leading to the back lot; the arrival of two known Bernard associates; and Bernard moving a large box within the truck and moving items inside that box. (See generally 6/27/07 Sent. Tr. 29-37.)
In addition, the Government presented transcripts of intercepted phone calls relating to the January 20 transaction, including a January 19 phone call between Carlos Diaz and Samograziano (both of whom were defendants in related drug prosecutions) in which Bernard was referred to as the "Jefe" (Spanish for boss) and a phone call between Samograziano and another participant on January 20 in which Samograziano expressed

Counsel extensively cross-examined the Government's witness and vigorously argued against both enhancements, contending that while Bernard had admitted that he had handled six kilograms of cocaine on January 20, he denied trafficking in anything close to 43 kilograms on that date. (Id. at 18-19.)

After hearing evidence and argument, the Court (Torres, J.) found that Bernard was not only a participant but also acted as a leader in both the January 20 and January 30 drug transactions and denied Bernard's Objections to the PSR. (Id. at 52-57.) After Bernard addressed the Court directly, Judge Torres sentenced Bernard to 168 months imprisonment, the lowest end of the applicable guideline range, followed by five years of supervised release and remission to immigration authorities. (Id. at 62-67.)

Bernard appealed to the First Circuit, represented by still different counsel, Attorney Matthew J. Santamauro. In his appeal he argued that the sentencing Court erred by: (1) finding Bernard responsible for 43 additional kilograms of cocaine as relevant conduct; (2) finding that he was an organizer/leader under USSG § 3B1.1(a); and (3) making its determinations based on a preponderance of the evidence standard in violation of the Sixth Amendment. The First Circuit rejected all of these arguments and affirmed his conviction and sentence. See United States v.

_____

amazement as to how quickly the 43 kilograms of cocaine had been distributed by Bernard that day. (See id. at 8, 14.)

Bernard, No. 07-2162 (1st Cir. Aug. 26, 2008).  Bernard did not

seek further review, and his conviction became final on or about

November 24, 2008.[7]

Thereafter, Bernard timely filed the instant motion to vacate.

In his motion he asserts ineffective assistance of both his trial

court counsel and his appellate counsel.  Specifically, he asserts:

(1)  that his plea counsel (a) failed to obtain a specific drug
     quantity as part of the plea agreement, and (b) induced
     Bernard into a "cooperation guilty plea," although he knew
     that Bernard would not qualify for the Safety Valve, see 18
     U.S.C. § 3553(f), and that the Government would not be willing
     to credit him for his cooperation;

(2)  that his sentencing counsel (a) failed to force the Government
     to comply with the provision in the plea agreement regarding
     his cooperation with law enforcement (b) failed to object to
     the Government attorney's prosecutorial misconduct in
     presenting evidence of the January 20 transaction at his
     sentencing; (c) failed to object to the evidence presented by
     the Government on that issue and to present rebuttal evidence;
     and (d) erroneously informed the Court, without Bernard's
     consent, that Bernard had admitted to participating in a
     transaction on January 20, 2006 involving six kilograms of
     cocaine; and

(3)  that his appellate counsel (a) failed to properly raise the
     foregoing claims on appeal; (b) failed to request a hearing en
     banc by the First Circuit; and (c) failed to advise Bernard of
     his right to petition for a writ of certiorari from the U.S.
     Supreme Court.

The Government has filed an objection to the motion to vacate

(see United States' Response to Defendant's Motion for Relief under

---

[7]  In January 2009 this matter was re-assigned to the
undersigned for all further proceedings in this Court, in view of
Judge Torres' retirement.

28 U.S.C. § 2255, Doc. #83 ["Gov't Resp."]), and Bernard thereafter

filed a Reply (Doc. #85).  This matter is ready for decision.[8]

II.  Discussion

A.  General Principles

Title 28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed in
> violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise subject
> to collateral attack, may move the court which imposed
> the sentence to vacate, set aside or correct the
> sentence.

28 U.S.C. § 2255(a).

Generally, the grounds justifying relief under § 2255 are

limited.  A court may grant such relief only if it finds a lack of

jurisdiction, constitutional error or a fundamental error of law.

See United States v. Addonizio, 442 U.S. 178, 184-185 (1979) ("[A]n

error of law does not provide a basis for collateral attack unless

---

[8] Although Bernard has requested a hearing, no hearing is
required in connection with any issues raised by the instant motion
to vacate because, as discussed infra, the files and records of
this case conclusively establish that the claims in the motion to
vacate are without merit.  See David v. United States, 134 F.3d
470, 477 (1st Cir. 1998) (district court properly may forego any
hearing "when (1) the motion is inadequate on its face, or (2) the
movant's allegations, even if true, do not entitle him to relief,
or (3) the movant's allegations need not be accepted as true
because they state conclusions instead of facts, contradict the
record, or are inherently incredible.") (internal quotations
omitted).

the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice.") (internal quotations and citation omitted).

<u>Ineffective Assistance</u>

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1) That his counsel's performance fell below an objective standard of reasonableness; and

(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

<u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694 (1984). <u>See</u> <u>Cofske v. United States</u>, 290 F.3d 437, 441 (1st Cir. 2002). The defendant bears the burden of identifying the specific acts or omissions constituting the allegedly deficient performance. Conclusory allegations or factual assertions that are fanciful, unsupported or contradicted by the record will not suffice. <u>Dure v. United States</u>, 127 F. Supp. 2d 276, 279 (D.R.I. 2001) (<u>citing</u> <u>Lema v. United States</u>, 987 F.2d 48, 51-52 (1st Cir. 1993)).

In assessing the adequacy of counsel's performance, the Court looks to "prevailing professional norms." All that is required is a level of performance that falls within generally accepted boundaries of competence and provides reasonable assistance under the circumstances. <u>Ramirez v. United States</u>, 17 F. Supp. 2d 63, 66 (D.R.I. 1998) (<u>quoting</u> <u>Scarpa v. DuBois</u>, 38 F.3d 1, 8 (1st Cir.

1994) and citing Strickland, 466 U.S. at 686).   To satisfy the prejudice requirement under Strickland, a defendant must show a reasonable probability that, but for counsel's errors, the outcome of the proceeding would likely have been different.  See Cofske, 290 F.3d at 441 (citing Strickland, 466 U.S. at 687).

B.   Trial Counsel

1.   Specific Drug Quantity

Bernard first claims that Attorney Cicilline failed to negotiate a specific drug quantity as part of the plea agreement. (See Motion to Vacate, Ground One.)   However, Bernard makes no showing that the Government would have agreed to stipulate as part of his plea agreement to a drug quantity that did not include the 43 kilograms of cocaine from the January 20 transaction, and the record suggests otherwise.  At Bernard's sentencing hearing, the Government acknowledged that it had  elected not to charge Bernard with the January 20 transaction but instead planned to use evidence of that drug transaction in support of a "relevant conduct" enhancement of Bernard's sentence for the drug offense he committed on January 30.  (See 6/27/07 Sent. Tr. at 23.)  Counsel cannot reasonably be expected to negotiate a drug quantity term to which the Government was unwilling to agree.  See Singleton v. United States, 26 F.3d 233, 239 (1st Cir. 1994) (counsel need not engage in futile exercise in order to be considered effective) (citations omitted).

2.   <u>Safety Valve Adjustment</u>

Bernard next claims that Attorney Cicilline induced him into a making a "cooperative" guilty plea even though counsel knew that Bernard would likely not qualify for the Safety Valve[9] and that the Government would not be willing to credit him for his cooperation. (<u>See</u> Motion to Vacate, Ground Two.)  Bernard maintains that he was misled into believing that he would be credited at sentencing in view of his cooperation with law enforcement during his initial 21 days in custody after his arrest.

This claim is belied by the wording of the plea agreement itself.  That agreement provided in pertinent part:

> If, however, Defendant qualifies for the provisions of U.S.S.C. [sic] § 5C1.2 and 18 U.S.C. § 3553(f) (the "safety valve"), the Government may recommend any sentence within the applicable range of sentences under the guidelines. <u>The Defendant understands that it is the Government's position that the Defendant does not qualify for the provisions of Safety Valve as defined in U.S.S.C.[sic] §§ 5C1.2(a)(4) and U.S.S.G. § 3B1.1, and therefore, does not qualify for the provisions of the safety valve.</u>  The Defendant is free to argue at sentencing that he is safety valve eligible.

(Plea Agreement, ¶ 2.a.) (Emphasis added.)

---

[9] The "safety valve" provision exempts certain drug offenders from mandatory minimum sentences.  <u>See</u> 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2.  The provision was enacted to "mitigate the harsh effect of mandatory minimum sentences" on first-time, low-level offenders in drug trafficking schemes. To qualify for relief under the safety valve, a defendant must meet five requirements, one of which is that he not have a leadership role in the offense.  <u>See</u> 18 U.S.C. § 3553(f)(1)-(5); <u>United States v. Padilla-Colon</u>, 578 F.3d 23, 30 (1st Cir. 2009).

At Bernard's initial plea hearing the Government, consistent with this term, expressed its intention to argue at sentencing that Bernard was in a leadership position and thus was disqualified from eligibility for the Safety Valve, and counsel for both parties acknowledged that there was a dispute as to whether Bernard had a leadership role. (See 12/21/06 Plea Tr. at 6-7.) Bernard has made no showing that he was advised otherwise. In addition, when questioned by this Court (Torres, J.) at the plea colloquy, Bernard indicated that he had reviewed the plea agreement with his attorney and understood it. (See 1/30/07 Plea Tr. at 12-13.) Thus, counsel's performance was not objectively deficient in this respect.

Moreover, the "substantial assistance" provision in the plea agreement expressly stated that the determination as to whether Bernard rendered "substantial assistance" so as to prompt the Government to file a motion for reduction in Bernard's sentence would be made by the Government "in its sole discretion." (Plea Agreement, ¶ 2.f.)[10] Bernard's counsel cannot be faulted for the

---

[10] Paragraph 2.f. provided in pertinent part:

Defendant understands that the decision whether to file such a motion is solely up to the United States Attorney's Office and the decision whether, and to what extent, to grant it is solely up to the Court.

Government's determination that Bernard's assistance was insufficient to warrant a request for a sentence reduction.[11]

Furthermore, at the plea hearing, Judge Torres questioned Bernard closely concerning his understanding -- and Bernard acknowledged -- that there was no guarantee either that the Government would recommend a lower sentence or that the Court would accept the recommendation and give him a lower sentence.[12]   As the

---

[11] Bernard's claim that his sentencing counsel failed to require the Government to comply with the plea agreement "stipulation" regarding his cooperation (Motion to Vacate, Ground Four) likewise fails for the same reason:   there was no stipulation.   Rather, under ¶2.f., the decision whether to seek a reduction in sentence based on Bernard's "substantial assistance" rested solely in the Government's discretion.

[12] The plea colloquy included the following exchange:

THE COURT:  Well, Mr. Bernard, I cannot seem to get to the point where--you haven't convinced me that your decision to plead guilty is not based in any way on the belief that you have been guaranteed or promised that you're going to get credit for your cooperation.

Now, there's a difference between a guarantee or a promise on which you base your decision to plead guilty and a promise that if certain things happen, the Government will make a recommendation that's favorable to you.

Do you understand the difference between those two things?

A.   Yes.

Q.   All right.  And what I'm asking you is--I need to have some assurance from you that you're not pleading guilty because you believe and rely on the belief that either, number one, the Government is definitely going to make a recommendation for a lesser sentence or, number two, that even if it does, that the Court is going to accept that recommendation.

So I need you to tell me whether your plea, your decision to plead, is based on those beliefs or whether

Government points out, Bernard had ample opportunity to raise any concerns he had with the plea agreement and the provisions concerning his cooperation with law enforcement.[13]

Finally, Bernard does not show how he was prejudiced as to either claim. The record shows that the benefits to Bernard under his plea agreement included (1) the Government's promise not to bring a § 851 information for his prior drug conviction -- which would have increased the mandatory minimum sentence he faced from 10 years to 20 years, see 21 U.S.C. § 841(b)(1)(A) -- and (2) his

------------------------------

you are making the decision independently and just hoping that the Government will make such a recommendation and the Court will accept the recommendation.

A.   Hoping that the prosecution will make that recommendation later on.

Q.   Okay. Are there any other promises that have been made to you that you have relied upon in deciding to plead guilty in this case?

A.   No.

Q.   Has anybody made any threats of any kind against you that have caused you to decide to plead guilty?

A.   No.

Q.   Is it correct to say, then, that you're making this decision voluntarily because you think it's in your best interest?

A.   Yes.

(1/30/07 Plea Tr. at 17-18.)

[13] The Government's argument that these claims should have been raised on direct appeal misses the point, as Bernard is raising them here in the context of an ineffective assistance claim. See Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994) (claims that should have been brought on direct appeal may be asserted in § 2255 proceedings, if asserted as ineffective assistance claims).

ability to argue to the Court that he was entitled to a term of imprisonment of less than the 10-year statutory mandatory minimum, notwithstanding the Government's refusal to agree to such a sentence.

Thus, Bernard's ineffective claims pertaining to his plea agreement and plea are without merit.

C.   Sentencing Counsel

1.   'Relevant Conduct' Evidence

Bernard claims that his sentencing counsel, Attorney DiLibero, was ineffective in failing to object to the Government's presentation of evidence of the January 20 transaction as "relevant conduct" to enhance his sentence for the January 30 offense. (Motion to Vacate, Ground Three.)   He contends that the Government's election to use this evidence at Bernard's sentencing rather than as the basis of a separate charge in the indictment constituted a breach of the plea agreement and "prosecutorial misconduct." (See Petitioner's Pro Se Memorandum of Law in Support of His Motion to Vacate, Set Aside or Correct Sentence Under 28 USC 2255 [sic] ["Pet. Mem."] at 7-8, 11.)   This claim has no support in law.

Under the Sentencing Guidelines, the Government was entitled to present evidence of relevant conduct in connection with its bid to show Bernard's responsibility for the additional 43 kilograms of cocaine and to support an aggravated role adjustment to his

sentence.   See U.S.S.G. § 3B1; United States v. Laboy, 351 F.3d 578, 585 (1st Cir. 2003) (court may draw on all "relevant conduct" when determining drug quantity or whether the defendant was an "organizer or leader" under sentencing guidelines).[14]   Thus, contrary to Bernard's contention, the Government's presentation of evidence of the January 20 transaction as relevant conduct did not constitute a breach of the plea agreement, much less prosecutorial misconduct.   Indeed, that agreement provided that the Government could "present any information to the Court for its consideration in fashioning an appropriate sentence." (Plea Agreement, ¶ 11.)

Moreover, sentencing counsel vigorously opposed this enhancement -- first by submitting objections to the PSR before the sentencing hearing (see Defense Objections Letter at 1-2, Defendant's Sent. Mem. at 1-4) and then at the hearing itself, at which he extensively cross-examined the Government's witness concerning the surveillance of both the January 20 and January 30 transactions and argued that there was no evidence that the 43 kilograms of cocaine had been directly observed (see 6/27/07 Sent. Tr. at 19, 37-43, 51).   The fact that counsel was unsuccessful in these matters does not render his performance objectively

---

[14]   Guidelines § 3B1.1 provides for a four-level upward adjustment if defendant was an organizer or leader of criminal activity involving five or more participants, § 3B1.1(a), or a two-level upward adjustment if he was an organizer and leader of criminal activity involving less than five participants, § 3B1.1(c).  Bernard received a four-level adjustment. (PSR, ¶ 21.)

deficient.  See United States v. Agramonte, 366 F. Supp. 2d 83, 86 (D.D.C. 2005) ("So long as a strategy or tactic employed by counsel was reasonable, that tactic is not a ground for attack even if it proved unsuccessful.") (citing Strickland, 466 U.S. at 699).

Bernard's related claim (Pet'r Mem. at 8) that his counsel should have presented evidence to rebut the Government's evidence concerning the January 20 transaction similarly stalls, as he fails to point to any such evidence that could have been presented.

In addition, contrary to Bernard's assertions, there was no stipulation in the plea agreement that the drug quantity to be attributed to him was 5.5 kilograms.  Rather, the plea agreement merely stated that he agreed to plead to "5 kilograms or more" of cocaine.  (Plea Agreement, ¶ 1.a.)  The fact that Bernard insisted that he was responsible for only 5.5 kilograms did not mean that the Government agreed with that assertion.[15]

2.  Admission as to Six Kilograms

Bernard further claims that his sentencing counsel was deficient because he informed the Court, without Bernard's consent, that Bernard had admitted to participating in a transaction on January 20, 2006 involving six kilograms of cocaine.  (Pet'r Mem. at 8-10; Reply at 3-5.)  He argues that these admissions prejudiced

---

[15] This claim is in any event at odds with Bernard's earlier claim, discussed supra at 11, that his plea counsel was ineffective in failing to negotiate an agreed upon drug quantity amount.

18

him in that it contributed to the sentencing Court's finding that he handled 43 kilograms of cocaine on January 20.

The references to these admissions were contained in the Defense Objections Letter (at 1-2) and in Defendant's Sentencing Memorandum (at 1-4), both submitted prior to the sentencing hearing. The latter document cited an FBI Field Investigation Report dated May 23, 2006 that described in detail statements made by Bernard, while in custody approximately one week after his arrest, that he possessed and distributed six kilograms of cocaine on January 20. (See Def.'s Sent. Mem., Ex. A.) Counsel's mention of these admissions, which were documented, was not unreasonable and could have constituted a reasonable defense strategy to defuse suspicion that Bernard had handled 43 kilograms of cocaine that same day. As such, it did not constitute objectively deficient performance. Strickland, 466 U.S. at 688.

Moreover, Bernard's claim that counsel's disclosure of this admission was made without his consent is not supported by the record. The record shows that, at the sentencing hearing, both Bernard's counsel and the Government's attorney referred to this admission without any protest from Bernard. (See 6/27/07 Sent. Tr. at 18-19, 23.)

Even if Bernard's counsel was deficient in disclosing this admission without consent, Bernard was not prejudiced. The Government presented substantial evidence, independent of this

point, showing that Bernard had participated in a 43-kilogram transaction on January 20. Bernard admitted to having rented a U-Haul truck on that date. The surveillance agents observed Bernard drive the U-Haul truck into the parking lot of his liquor store and back it up to a loading dock in such a position that its loading and unloading activities could not be seen from the street. (6/27/07 Sent. Tr. at 27-37.) Agents also observed people coming to and going from the parking lot within a short time span after it arrived and further observed individuals walking near the parking lot perimeter who appeared to be lookouts. (Id.) In addition, the Court of Appeals noted that the sentencing Court's finding on this point was amply supported by other evidence besides Bernard's admission as to six kilograms. See Bernard, Dkt. No. 07-2162, at *2 (pointing to transcripts of contemporaneous phone calls, informants' description of Bernard as a large-scale trafficker and Bernard's forfeiture of nearly $100,000 in drug proceeds). Therefore, this claim likewise fails.[16]

---

[16] In his Reply, Bernard requests that he be furnished copies of certain submissions by his sentencing counsel – namely, Defendant's Sentencing Memorandum and the Defense Objections Letter – pursuant to Rules 5(c) and 6 of the Rules Governing Section 2255 Proceedings. (See Reply at 4.) Putting aside the issue of whether the request was properly raised, because the requested documents do not change the outcome herein, and because Bernard has not explained how the documents will otherwise assist his case, this Court concludes that he has not shown "good cause" for discovery under § 2255 Rule 6(a), and the request must be denied to the extent he seeks to defer proceedings pending his review of them.

D.   <u>Appellate Counsel</u>

Bernard's final claims are that his appellate counsel, Attorney Matthew J. Santamauro, was ineffective because he failed to properly raise the foregoing claims on appeal, and because he further failed to request a hearing <u>en banc</u> by the Court of Appeals or to advise Bernard of his right to petition for a writ of certiorari from the U.S. Supreme Court. (Motion to Vacate, Ground Five.)   All of these claims are without merit.

To establish ineffective assistance of appellate counsel, a defendant "must first show that his counsel was objectively unreasonable." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000).   "As applied to appellate counsel, that standard is difficult to meet because, to be effective, 'appellate counsel . . . need not (and should not) raise every nonfrivolous claim, but rather may select among them in order to maximize the likelihood of success on appeal.'"   <u>Thompson v. Spencer</u>, 111 Fed.Appx. 11, 13 (1st Cir. 2004) (<u>quoting</u> <u>Robbins</u>, 528 U.S. at 288).

Here, Bernard's first claim fails for two reasons.   First, claims of ineffective assistance are generally not raised on appeal. <u>See</u> <u>United States v. Negron-Narvaez</u>, 403 F.3d 33, 40 (1st Cir. 2005) ("For over twenty years, this court has held with monotonous regularity that 'fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and

acted upon by, the trial court.'") (quoting United States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993)).  Thus, appellate counsel could have reasonably refrained from raising such claims.

Second, even if appellate counsel could have raised such claims, he would not have been successful, because they are, in any event, without merit, as discussed supra.  See Tse v. United States. 290 F.3d 462, 465 (1st Cir. 2002) ("Since [petitioner]'s claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims . . . on appeal must also fail.").

These principles likewise dispose of Bernard's claim that appellate counsel was ineffective in failing to petition the Court of Appeals to rehear his appeal en banc in order to challenge that court's reliance on his admission concerning the distribution of six kilograms on January 20.  For the reasons set forth above, such a petition would have been unsuccessful, even if any request for re-hearing might have been considered, which is extremely unlikely. See Fed. R. App. P. 35(a) (en banc re-hearing ordinarily is not ordered unless necessary to secure or maintain uniformity of the court's decisions or unless proceeding involves a question of exceptional importance).

Finally, there was no error, let alone a constitutional error, in appellate counsel's failure to advise Bernard of his option to petition for a writ of certiorari from the U.S. Supreme Court.  See

<u>Pena v. United States</u>, 534 F.3d 92, 94-96 (2d Cir. 2008) (no ineffective assistance in counsel's failure to notify him of right to seek certiorari review from Supreme Court). <u>See also</u> <u>Derman v. United States</u>, 298 F.3d 34, 45, n.7 (1st Cir. 2002) (noting Supreme Court holding in <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53 (1991), that failure to file petition for discretionary review cannot constitute cognizable ineffective assistance of counsel).

This Court has considered all other arguments raised by Bernard, and finds them to be without merit.

III. <u>Conclusion</u>

For all of the foregoing reasons, Bernard's motion to vacate sentence is denied and dismissed.

Bernard's motion for copies of Defendant's Sentencing Memorandum and the Defense Objections Letter is likewise DENIED, to the extent they are sought for discovery purposes in this proceeding. However, the Clerk's Office is directed to forward to Bernard copies of those documents (including all Attachments to Defendant's Sentencing Memorandum (Doc. #50), along with a copy of this Memorandum and Order.


<u>RULING ON CERTIFICATE OF APPEALABILITY</u>


Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts, this Court hereby

finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because the movant has failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

The movant is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  <u>See</u> 2255 Rule 11(a).


IT IS SO ORDERED:


<u>/s/ William E. Smith</u>
William E. Smith
United States District Judge
Date: April 20, 2010